## VICTORY MOTOR CO. et al. v. ERWIN.
### (No. 12061.)

Court of Civil Appeals of Texas. Fort Worth. Dec. 8, 1928.

Rehearing Denied Jan. 19, 1929.

Fitzgerald & Hatchitt, of Wichita Falls, for appellants.

Felder & Nelson, of Wichita Falls, for appellee.

DUNKLIN, J. J. Milton Erwin, doing business under the trade name of Erwin Motor Sales, was engaged in the purchase and sale of automobiles and in the conduct of a garage and repair shop in connection therewith, all in the city of Wichita Falls. The Victory Motor Company, a private corporation, was likewise engaged in the same character of business in the same city. L. O. Brown was president of this corporation, and he and Mary J. Bever, Oscar Williams, and F. W. Grogan owned all the capital stock of the corporation.

Erwin instituted this suit against the corporation and the stockholders mentioned above to recover damages growing out of an alleged breach of a contract made by all the defendants, to the effect that plaintiff would sell and deliver to the defendant corporation

all the assets of his business, consisting of automobiles, accounts, promissory notes, automobile accessories, tools, shop equipment, furniture, and fixtures and a Hupmobile sales agency, and in consideration therefor that he should receive capital stock in the defendant corporation to be conveyed to him by the stockholders made defendants in the suit. According to further allegations in the petition, it was agreed by and between the parties that an inventory would be taken of all of plaintiff's assets and also of all the assets on hand belonging to the defendant corporation; that all of said assets should be invoiced according to a certain method agreed on by the parties; and that plaintiff should receive the same percentage of all the outstanding capital stock as his assets should prove to be of the combined assets of himself and the defendant corporation.

Further allegations in plaintiff's petition were to the effect that, in pursuance of the contract between the parties, plaintiff delivered to the Victory Motor Company all the assets of his business, together with an inventory and invoice thereof in compliance with his obligation so to do, and, after such delivery, the Victory Motor Company continued its business with the combined assets of itself and of plaintiff for approximately two months, at the end of which period L. O. Brown, acting as president of the corporation, and as the duly authorized agent and representative of all the defendants, terminated the contract, and notified the plaintiff to take back and remove from defendants' place of business all the assets then on hand which plaintiff had contributed to the business, and refused to furnish plaintiff any inventory or invoice of the assets of the Victory Motor Company to serve as a basis for an apportionment of the capital stock, and the defendants, each and all, refused to transfer and deliver to plaintiff any such capital stock.

It was further alleged that plaintiff then took back the remainder of his said assets, which had depreciated in market value since the time of their delivery to the defendant corporation. He sought a recovery for such depreciation in market value, also for recovery of some of the assets alleged to have been delivered to the defendants and not returned, and for the proceeds of sales made by the defendant corporation of some of the automobiles which plaintiff delivered to it, and for the proceeds of certain funds collected by the corporation on certain notes turned over to it by the plaintiff as part of the latter's assets.

Judgment was rendered in plaintiff's favor against the defendants, who were stockholders in the Victory Motor Company, for the sum of $3,752.62, which the jury found, was the depreciation in the market value of the assets turned over to the defendant during the period of time transpiring between the date of such delivery and the date of their return to the plaintiff, and for the additional sum of $500 as damages against the defendant Victory Motor Company. A receiver, appointed during the pendency of the suit, collected certain notes and had paid off certain liabilities of the plaintiff, and in the judgment the rights of the parties relative to such proceeds were determined according to the agreement of the parties, and no complaint is made of such action. But the defendants have appealed from the award of damages made against them.

The record shows without controversy that the contract, if any, between the parties was in parol. Plaintiff's testimony was in accordance with the allegations in his petition noted above, and, although the proof offered by the defendants was in sharp conflict therewith, the questions hereinafter noted will be discussed upon the assumption that such testimony of the plaintiff is true and sufficient to support the verdict.

Appellants' assignment of error to the measure of damages allowed by the court against the defendant stockholders is sustained for the reason hereinafter given.

■ As noted, plaintiff's suit was for damages, on the theory of the defendant's breach of their contract of purchase of his assets and to pay therefor in the capital stock in the Victory Motor Company. According to the general rule applicable to contracts of that character, if the alleged contract has not been performed by either party, plaintiff's damages for breach of the same by defendants would be the difference between the value of the stock he would have received and the value of the assets contracted to be delivered in exchange therefor, if the former exceeded the latter. But in the petition there was no allegation of the value of such stock, and no proof was offered on the trial to establish the same; and, since defendants never made out and submitted to plaintiff for his approval an inventory and invoice of their assets, as was agreed to be done, it may be doubted that there was ever a final consummation of the contract between the parties. Furthermore, having taken back the bulk of the assets which he had formerly delivered to the defendants under the contract, he was in no position to claim damages for a breach of contract, even if one was definitely consummated. If the alleged contract was in fact consummated, then by delivering over his assets he had the right, at his election, to treat the assets as the property of the defendants and sue for damages for breach of the contract, the measure of which would be the value of the stock which the defendants had contracted to deliver to him; or, in the alternative, to treat the contract as discharged and of no further effect, and sue for the value of the assets which he had delivered to the defendants and which had been appropriated by them. Those two remedies being inconsistent

with each other, his election to pursue the latter was a waiver of his right to resort to the former. He could not pursue both.

■ The right of recovery for the value of the assets turned over to the defendants and appropriated by them would be based upon the quasi or implied contract of the defendants to return to the plaintiff what he had paid to them under the contract which they had repudiated and refused to perform.

The pleadings of the plaintiff and the evidence introduced by him in support thereof clearly show his election to recover upon a quasi or implied contract on the part of defendants, and a waiver of right to claim damages for a breach by defendants of the contract alleged in his petition, if, in fact, that was a definite and complete contract. Such being the legal effect of plaintiff's suit, there was no proper basis for charging defendants with depreciation of the market value of the assets turned over to them and later restored to the plaintiff, with no showing that such depreciation resulted from use of the same by defendants or from a failure to properly care for same.

In 6 Page on the Law of Contracts, § 3242, it is said: "The right to enforce the contract by an action for damages or for specific performance, and the right to ignore the contract and to recover the reasonable value of the performance, are alternative, inconsistent, remedial rights which the law gives upon breach. The party who is not in default may elect between them. The party who is in default has no such election, even in jurisdictions in which he is allowed such quasi-contractual right. Since these rights are inconsistent, the party who is not in default may elect between them but he cannot have both. On the one hand, an action to enforce the quasi-contractual right, operates as a waiver of a right of action for damages. * * * If he elects to treat the contract as discharged and to seek to recover what he has paid in thereunder, he cannot add a claim for special damages."

See, also, the same text in sections 3250 and 3253; 13 Corpus Juris, par. 663, p. 614, and paragraph 725, pp. 651 to 653, inclusive.

The following is quoted from the syllabus in Timmerman v. Stanley, 123 Ga. 850, 51 S. E. 760, reported in 1 L. R. A. (N. S.) 379:

"The allegations * * * in this case make it a suit for the amount paid to the defendant by the plaintiff, treating the contract as rescinded. In addition the plaintiff sought to recover certain damages resulting from a breach of the contract, treating it as of force. The latter claim should have been stricken on demurrer as inconsistent with the former."

See, also, authorities cited in the opinion in that case and in the footnotes of its report in L. R. A.

For the reasons noted, the judgment of the trial court is reversed, and the cause remanded for further proceedings not inconsistent with the conclusions herein announced.

### On Motion for Rehearing.

The principal contention urged by appellee in his motion for rehearing is, in effect, that, even though he elected to take back some of the assets which he had delivered to the defendants, yet he had the right to recover the agreed price of the assets which were not returned to him, and that such was the legal effect of the judgment recovered by him in allowing him damages for the difference between the agreed value of all the assets which he contracted to deliver and the market price of the assets returned to him.

■ As pointed out in opinion on original hearing, to sustain that contention would be, in effect, to say that appellee could elect to declare the contract rescinded and terminated as to that part which related to the assets that were returned to and received by him, and sue for damages for breach of the contract to pay for the assets not returned by the defendants, the value of which would be the invoice price thereof agreed to by the appellants. In the first place, to so hold would be to say that the contract was divisible into two separate and independent parts, in the absence of any pleading or evidence that such was the understanding of the parties. In the second place, such a holding would be contrary to the well-established rule that on the happening of a breach of a contract the party not at fault must elect between treating the contract as terminated, and treating it as still in effect; and that an election by him of one of those rights is a waiver of the other inconsistent right. And the rescission or termination by Erwin of the contract in part operated as a rescission of it in its entirety, for otherwise a recovery for the alleged breach would be for breach of a different contract from that agreed on by the parties. The agreed values of the articles not returned could not be given any effect except in a proper action to enforce the entire contract as made by the parties, and then only for the purpose of measuring plaintiff's damages. The agreement of the defendants expressed in the original contract as to the values of such assets could not of itself, independently of other terms of the contract, furnish a basis of recovery for such agreed values.

In addition to authorities cited in original opinion, see 5 Page on Law of Contracts, §§ 2994, 2997, 3000, 3025, 3030, and 3038; also 2 Black on Rescission and Cancellation, § 583.

Those principles are applicable and controlling in this case whether the contract between the parties was one of sale by the appellee of his assets to the defendant, and not a contract for exchange of properties, as stressed in his motion for rehearing, since they are applicable alike to either a contract of sale or one of exchange.

■ It is further argued that at all events the judgment should be affirmed to the extent of $500, since one of the stipulations in the contract of sale was that Erwin should be paid a salary for his services in that sum. It conclusively appears from plaintiff's pleadings and the evidence offered by him that the contract was entered into as an entirety, and that it did not embrace two separate and independent agreements, one of sale and one of employment of the plaintiff, Erwin, to perform services as a mechanic. Our conclusion with respect to plaintiff's asserted right to recover the value of the assets turned over to the defendants by him and not returned are likewise applicable to this contention, which is accordingly overruled.

Motion for rehearing is overruled.