**Ted F. KARAM, Appellant,**

v.

**Severo V. GARCIA, Appellee.**

No. 5009.

Court of Civil Appeals of Texas.

El Paso.

July 13, 1955.

Rehearing Denied Sept. 28, 1955.

Andress, Lipscomb & Peticolas, El Paso, for appellant.

William C. Collins, El Paso, for appellee.

FRASER, Justice.

This is an appeal from the District Court of El Paso County, Texas. The case was tried to a jury, resulting in a judgment for the plaintiff in the sum of $26,887.07. The suit was based on a written contract of July 12, 1951, between plaintiff and defendant, wherein the plaintiff was buying an apartment house from the defendant for the sum of $42,500, with a provision that defendant would accept $20,000 worth of merchandise and fixtures from plaintiff's store at invoice price. Plaintiff then pled an oral modification to the effect that the parties agreed that no inventory would be necessary, and that defendant would accept plaintiff's merchandise and fixtures as a $20,000 down payment on the apartment house. Plaintiff further pled a subsequent oral agreement entered into on or about July 18, 1951, by which he alleges defendant agreed to pay plaintiff $13 a day as wages to him and a helper for keeping the store open and operating. Defendant denied lia-

bility, and denied making either the oral modification or the oral agreement of July 18th, and defended on the ground that plaintiff had refused to take an inventory, thereby breaching the written agreement and releasing defendant from further performance.

This is our second disposition of this case. On the first we held here that the attempted modification was in violation of the Statute of Frauds, and reversed and rendered the case. Tex.Civ.App., 267 S.W. 2d 890. The Supreme Court reversed the decision of this court, 276 S.W.2d 255, holding that the parties had not violated the Statute of Frauds, and referred the case back to us for disposition of other points of error which we had not decided in our original opinion.

The first fourteen points are overruled as in our opinion the matters stated therein have been disposed of by the decision of the Supreme Court.

Appellant's 15th point complains of error in the action of the trial court in refusing to instruct a verdict for the defendant on the ground that plaintiff had not proved the proper measure of damages. Examination of plaintiff's petition indicates that plaintiff alleges the written contract of July 12th, wherein he agreed to buy the apartment house from the defendant for $42,500, defendant agreeing to take $20,000 worth of goods and merchandise at invoice price as a down payment. Plaintiff further alleges the oral modification dispensing with an inventory, and the alleged agreement of July 18th regarding wages. Plaintiff has made it clear by his petition and brief that he is not here suing for specific performance, or for loss of bargain or profit. There is no finding by the trial court as to actual or market value of the merchandise and fixtures in plaintiff's store. The jury found that the defendant received all of the merchandise, equipment and furnishings of plaintiff. Having not elected to sue for specific performance or for loss of profit or bargain, it is clear that plaintiff charges defendant with breach of contract and sues for his loss resulting therefrom,

and for the wages alleged to have been incurred by virtue of the July 18th agreement, and accruing from that date down to the trial date, approximately twenty months later. Plaintiff asks as his damages, the sum of $20,000 as the contract price for the sale of his store. Had this been an outright sale he could likely have done so, but here it was a swap, or trade, each side putting his trading price on his product, so it is not just a sale by the plaintiff of his store to the defendant. Assuming that defendant had breached his contract and has received merchandise and fixtures of plaintiff's store as alleged by plaintiff and found by the jury, then plaintiff having declined to ask for specific performance or damages for loss of bargain or profit, must sue for that which he has lost or been deprived of by defendant's alleged breach, namely, his store, or the furniture and fixtures therein, or its value. We have no finding in this case as to the market value of said fixtures and merchandise. The only finding is as to the invoice price of same. While the invoice price may be used as an item of evidence to prove market or actual value, it is not of itself the actual or market value, but only the cost of the goods. On the basis of his pleadings plaintiff asks in effect to be made whole, and this can only be done by restoring him either that which he lost or its value. Had he sued for specific performance or loss of bargain the rule might be otherwise. Here, by his pleadings and briefs, he alleges the loss of his store to defendant, and defendant's refusal to convey the apartment house, and asks damages for the loss of his store, so of course all he can recover, if successful, is the actual or market value of that which he lost. He obviously treats the contract as breached, and discharged, and not asking for damages for loss of bargain, or for specific performance, the contract price of the store would not apply, but rather the actual value of that which he lost would be the measure of his damages. It is felt that Victory Motor Co. v. Erwin, Tex.Civ.App., 12 S.W. 2d 1059, 1060, writ dismissed, is in point. In that case Erwin agreed with defendant motor company to sell and deliver to the defendant corporation the assets of his bus-

iness and to receive as consideration therefor capital stock in the defendant corporation. Erwin alleged that he delivered the assets of his business, but defendant corporation refused to convey any stock to him. Erwin sued for depreciation in value of the assets received back, and for recovery of the value of some assets retained by defendant corporation. The court said:

"* * * if the alleged contract has not been performed by either party, plaintiff's damages for breach of the same by defendants would be the difference between the value of the stock he would have received and the value of the assets contracted to be delivered in exchange therefor, if the former exceeded the latter. * * * If the alleged contract was in fact consummated, then by delivering over his assets he had the right, at his election, to treat the assets as the property of the defendants and sue for damages for breach of the contract, the measure of which would be the value of the stock which the defendants had contracted to deliver to him; or, in the alternative, to treat the contract as discharged and of no further effect, and sue for the value of the assets which he had delivered to the defendants and which had been appropriated by them. Those two remedies being inconsistent with each other, his election to pursue the latter was a waiver of his right to resort to the former. He could not pursue both."

■ Because there was no finding by the trial court as to actual or market value of the merchandise and fixtures, we must sustain appellant's point, and send this case back to the trial court so that that matter can be determined. Point 15 is therefore sustained. McDonald v. Whaley, Tex.Com.App., 244 S.W. 596, Syl. 6; Victory Motor Co. v. Erwin, supra; St. Louis Southwestern Ry. Co. v. Moss, 37 Tex.Civ. App. 461, 84 S.W. 281, no writ history.

Appellant's 16th and 21st points are overruled, as plaintiff pled and the jury found that he had lost his entire stock of goods to the defendant.

Appellant's 17th, 18th and 19th points are overruled, as they relate to failure of plaintiff to take an inventory. This matter was covered by the alleged oral modification and submitted to the jury, and the Supreme Court has held that such modification was not in violation of the Statute of Frauds.

Appellant's 20th point objects to the submission of issue No. 3, which issue inquired as to the total invoice price of the merchandise, equipment and furnishings in plaintiff's store at the time same were received by defendant. Plaintiff here has never proven the market value of either the apartment house or the store, does not sue for specific performance or loss of bargain, therefore we think appellant's point is good and that this issue should not have been submitted on the basis of the pleadings and evidence before the court. St. Louis & Southwestern Ry. Co. v. Moss, supra. Appellant's 20th point is accordingly sustained.

Appellant's 22nd and 23rd points are sustained for the same reason given in our disposition of point 20.

Appellant's points 24, 25 and 28 are overruled without discussion.

■ Appellant's 27th and 30th points are overruled, as the plaintiff apparently elected to claim under the alleged employment agreement. These two points assert that plaintiff had estopped himself from claiming any salary because he had retained profits from the operation of the business, but as stated above, plaintiff apparently made his election and filed his lawsuit accordingly.

■ Appellant's 29th point alleges that there was insufficient evidence to support the affirmative answer to issue No. 2, the answer to which issue found that defendant had received plaintiff's merchandise, fixtures, etc. We must overrule this point because the record shows that defendant,

by his own admission, removed at least two truck loads of goods from the store, and that one Abraham also took away some goods, plus the testimony of plaintiff's son to the effect that defendant took possession. It must be noted that this issue and its answer merely says that defendant took possession of the store, but does not actually state that defendant retained and exercised such possession for any length of time.

Appellant's 31st and 32nd points relate to matters no longer in litigation, and are therefore overruled.

Appellant's 33rd point states that the answer of the jury to Question No. 1 is without support in the evidence. The question was as follows:

"Question No. 1: Do you find from a preponderance of the evidence that on or about July 12th, 1951, subsequent to the execution of the written contract dated July 12th, 1951, the Plaintiff and the Defendant orally agreed one with the other that the Defendant was to buy all of the merchandise, equipment and furnishings of the Plaintiff for the sum of $20,000.00 without taking an inventory? Answer yes or no."

█ It is clear that this point must be sustained, as this issue submits to the jury the question as to whether the parties had entered into an entirely new and different contract not involving or concerning the apartment house, but suggesting an outright purchase of the store by the defendant. There is nothing in the evidence to sustain the submission of this question or the issue submitted in this form, and plaintiff has always continued to complain of defendant's failure to convey the apartment house to him, and nowhere alleges the type of contract inquired about in issue No. 1. If this situation had existed and the issue been correct, then of course there need have been no controversy whatever about the Statute of Frauds. This point is therefore sustained.

Appellant's point 34 goes to a matter included in and disposed of by us in our treatment of the 29th point, and this point is therefore overruled.

█ Appellant's 35th and 36th points assert that the findings of the jury in answer to question 6 to the effect that defendant agreed with plaintiff that he was to open and operate the store for defendant until defendant found a buyer, were against the overwhelming preponderance of the evidence, and that the findings of the jury in answer to question No. 7 that defendant agreed to pay plaintiff and a helper $10 and $3 a day respectively for their services while operating the store was also against the overwhelming preponderance of the evidence. We think these points must be sustained, as it is clear from the record that from the latter part of July on plaintiff exercised many acts indicating complete control and dominion over the store. He took care of the rent, bought several thousand dollars worth of goods in the name of the store, apparently never demanded payment from defendant for his services during the entire twenty months, hired an exterminator, paid city, county and state taxes, showed profits from the store on his income tax, admitted that he had been ordered by defendant not to buy any goods, and paid all utilities. These facts and acts form such a cumulative physical contradiction to plaintiff's own testimony as to these two agreements as to make the finding of the jury against the great weight or preponderance of the evidence, and leave said findings without sufficient evidence to sustain them. It must be remembered that the only evidence in the record as to these two agreements comes from the plaintiff himself, while these other facts are uncontroverted. The rule as to the weight to be given to testimony of the parties in a law suit is too elementary to require quotation. These two points are accordingly sustained, because the findings are against the overwhelming preponderance of the evidence, and there is not sufficient evidence to sustain them.

It is thought that appellant's points 38 and 39 are effectively disposed of by our rulings on previous points, and they are accordingly overruled.

. Appellant's 40th point must be sustained, as the plaintiff himself testified that he was in bad health and wanted to get out of the store for that reason, and so he would not have to go back to the hospital, and that was his reason for selling the store. Our reasons given for the disposition of points 35 and 36 are also applicable here, as the physical facts confirm defendant's position and leave only the plaintiff's personal testimony to support his allegation of the agreement regarding defendant's having hired him and a helper to keep the store open indefinitely. This point is accordingly sustained.

■ Appellant's 37th point complains of the trial court's failure to grant him a new trial on the ground of newly discovered evidence. We have examined this matter carefully, and do not feel that the trial court abused his discretion by his ruling, and this point is accordingly overruled.

In conclusion, it must be observed that based on the issues submitted, this case was apparently submitted on a theory completely unsupported by the evidence. Issues Nos. 1, 2 and 3 are again reproduced to illustrate this point:

"Question No. 1: Do you find from a preponderance of the evidence that on or about July 12th, 1951, subsequent to the execution of the written contract dated July 12th, 1951, the Plaintiff and the defendant orally agreed one with the other that the defendant was to buy all of the merchandise, equipment and furnishings of the plaintiff for the sum of $20,000.00 without taking an inventory? Answer yes or no."

"Question No. 2: Do you find from a preponderance of the evidence that the plaintiff turned over to and the defendant received all of the merchandise, equipment and furnishings of the plaintiff, in compliance with said agreement, if you have found that such agreement was made? Answer yes or no."

"Question No. 3: What sum do you find from a preponderance of the evidence represents the total invoice price of all the merchandise, equipment and furnishings in plaintiff's store at the time same were received by the defendant, if you have found that the defendant received same? Answer in dollars and cents."

Examination of the above issues indicates that this case was submitted apparently on a theory of outright sale by the plaintiff of his store to the defendant, because consideration of these issues and the remainder of the issues submitted reveals that nowhere is there any question submitted asking whether the alleged written contract was ever breached. The plaintiff, through his own testimony and that of his witnesses, states that the written contract was modified to dispense with the taking of an inventory, and he is found saying on various occasions

"I take the apartments, he take the store."

He of course presumably intended to execute a note for the balance of the $42,500. There is no finding that the written contract with its alleged oral modification was ever breached by defendant Karam. We have searched the record carefully and can find no evidence that the parties ever entered into a separate contract for the purchase of the store by Karam, the defendant, apart from the exchange agreement as alleged to have been modified, and yet the issues above set forth seem to ask the jury to answer that specific question without any foundation in the evidence, whatever.

Because of the rulings set forth above, this case must therefore be reversed and remanded.