STRAUSS v. MUTUAL RESERVE FUND LIFE ASSOCIATION.

(Filed June 4, 1901.)

1. INSURANCE—*Contract—Mutual   Benefit   Associations—Vested Rights.*

   A mere general consent by a member of a mutual benefit association to the amendment of its by-laws and constitution does not authorize such a change as will destroy his vested rights.

2. INSURANCE—*Vested Rights—Recovery of Premiums—Remedy.*

   Where a mutual benefit association violates its contract, the most practical remedy of a member is to bring action for the premiums paid, with interest thereon.

PETITION to rehear this case dismissed. For former opinion, see 126 N. C., 97.

128——30

STRAUSS *v.* LIFE ASSOCIATION.

*W. W. Clark,* for the plaintiff.

*Hinsdale & Lawrence, Shepherd & Shepherd,* and *Sewell Tyng,* for the defendant.

DOUGLAS, J. This case is before us on a rehearing, being originally reported in 126 N. C., 971. We have again given it careful consideration, and have been forced to the same conclusions announced in our former opinion. It seems useless to again discuss the principles involved, as they are few and simple as the case is viewed by us. The plaintiff had a contract of insurance with the defendant, which the latter seems to have violated in its most essential features with the result of having destroyed its value to the plaintiff. But it is said that the plaintiff made such contract of insurance with a mutual insurance association of which he was a member, and by virtue of such membership; and that he is therefore bound by all such rules and regulations as may be thereafter lawfully adopted. "Lawful adoption" may mean much or little. Rules may be adopted under the forms of law that might nevertheless be so unreasonable and inequitable as to be clearly beyond any possible contemplation of law. In any event such rules can never have any greater force than the law that authorizes their adoption, and if this has the effect of impairing the obligation of a contract, it is void by constitutional inhibition.

But it is said that the plaintiff upon entering the association agreed, expressly or impliedly, that changes might be made in its constitution and by-laws, and is bound thereby. We have no evidence that he agreed that such changes might be made as were made; and we have no idea that he ever intended to place it within the power of the association to break his contract at pleasure, or render it utterly valueless by subsequent stipulations or regulations adopted without his consent. A mere general consent that the constitution and by-

laws may be amended, applies only to such *reasonable* regulations as may be within the scope of its original design. We must again repeat what we said in our former opinion: "Whatever may be the power of a mutual association to change its by-laws, such changes must always be in furtherance of the essential objects of its creation, and not destructive of vested rights."

It is urged by the defendant that if the plaintiff is entitled to any relief, it is not by recovery of the premiums he has paid, but by mandamus for reinstatement. This remedy is not demanded by the plaintiff, nor does it seem practicable to us. It is true we might issue the mandamus to a foreign corporation having its general offices in New York, but how to make such a mandamus effective is a different question, the solution of which is not at all clear to us. Moreover, in the present instance the plaintiff, Strauss, is now dead. Much stress has been laid upon the fact that the Supreme Court of Minnesota, in *Ebert v. this defendant,* 83 N. W. R., 506, while agreeing with us upon the main question of the right of recovery, differs with us as to the measure of damage. We are much impressed with the views of the Court upon that point, which have much to commend them as theoretical propositions; but we are equally impressed with the frank admission of the Court as to the difficulty of their practical application.

Our own rule, even in our own minds, falls short of theoretical perfection, but after most careful consideration we are unable to find a better. The impaired health of the insured, or his having passed the insurable age, would present complications practically insurmountable in the actual trial of an action. Moreover, the defendant claims that the plaintiff's insurance has cost more than he has paid in, and therefore his recovery would be nothing. The plaintiff would have no means of disproving the alleged cost of his past insurance, the

proof of which would be exclusively in the possession of the defendant. He might cross-examine the defendant's witnesses or demand its books and papers; but if he got them, what could he do with them? It seems to have taken the defendant several years to find out that the plaintiff's insurance was costing more than his premiums, and this it did only with the assistance of the Insurance Commissioner of New York and expert actuaries. With or without such assistance, what chance would the average juror have of mentally digesting five hundred pages of insurance statistics?

All actions must be capable of a practical determination, with a reasonable certainty of substantial justice; and rules of law must be adjusted to that end, even if in exceptional cases they fall short of the full measure of ideal right. A distinguished jurist has said: "Indeed one of the remarkable tendencies of the English Common Law upon all subjects of a general nature is, to aim at practical good rather than at theoretical perfection; and to seek less to administer justice in all possible cases, than to furnish rules which shall secure it in the common course of human business." Story Eq. Jur., page 115. The rule we have followed is not new. It was laid down by Chief Justice Pearson in *Braswell v. Insurance Co.,* 75 N. C., 8, and has been uniformly followed in this State for the past twenty-five years.

But it is said this rule was intended to apply to "old line" companies and not to mutual associations. Where is the essential difference in principle or in its practical result? Both companies pay back only what they have received with legal interest thereon, and neither company is permitted to retain anything for the cost of past insurance. If the mutual association receives less, it pays back less. If the "old line" company collects more than the actual cost of insurance, it pays back that much more, and loses its surplus as well as its cost of insurance.

As we see no reason to change our former judgment, the petition to rehear is denied.

Petition dismissed.